| | |
|---|---|
| IAFREEDRE MCCLAIN, MONTRELL DAVIS, and others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CIVIL ACTION FILE<br>) NO. 3:18-cv-00419-FDW-DCK<br>) |
| MORNING STAR, LLC a/k/a MORNING STAR NC, LLC, d/b/a HARDEE'S, | )<br>)<br>) |
| Defendant. | ) |

| | |
|---|---|
| E.P. and S.F., individually and on behalf of others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CIVIL ACTION FILE<br>) NO. 3:18-cv-00483-FDW-DCK<br>) |
| CKE RESTAURANTS HOLDINGS, INC., a Delaware Corporation; HARDEE'S FOOD SYSTEMS LLC, a North Carolina Corporation; HARDEE'S RESTAURANTS LLC, a Delaware Corporation; and MORNING STAR, LLC a/k/a MORNING STAR NC, LLC, a Florida Corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**JOINT MOTION FOR FINAL APPROVAL OF**
**CLASS CERTIFICATION AND CLASS SETTLEMENT**

COME NOW the parties identified in the caption above, by and through their respective attorneys of record, and respectfully request that the Court issue an order approving the Joint Motion for Final Approval of Class Certification and Class Settlement.

1

## I. RELIEF REQUESTED

The parties to this action hereby jointly move the Court to grant final approval of the certification of the settlement and of this class action, stating as follows:

## II. BRIEF STATEMENT OF FACTS

Plaintiffs have made claims against Defendant and originally filed the above-captioned class action complaints against Defendants in the General Court of Justice, Superior Court Division, Mecklenburg County, North Carolina, respectively identified as Civil Action Nos. 1 8- CVS-12752 (June 21, 2018) and 18-CVS-14007 (July 16, 2018). Defendants removed both actions to the United States District Court, Western District of North Carolina, Charlotte Division ("the litigation"). Plaintiffs dismissed without prejudice CKE Restaurant Holdings, Inc., Hardee's Food Systems LLC, and Hardee's Restaurants LLC from Civil Action No. 3:18-cv- 00483.

The damages sought are the cost of Hepatitis A Virus ("HAV") blood testing and/or HAV vaccines or immune globulin ("IG") shots and an amount for the inconvenience for being warned and encouraged to receive the treatment.

Plaintiffs and putative class members obtained an HAV vaccination or an IG shot (with some persons also getting an HAV blood test) because of their potential exposure to HAV during an outbreak in the metropolitan Charlotte area in the summer of 2018. An employee working at the Hardee's restaurant located at 2604 Little Rock Road, Charlotte, NC 28214 ("Charlotte Hardee's") was one of the individuals who contracted an HAV infection during the outbreak. He last worked at the restaurant on June 23, 2018 and did not return to work again before the restaurant permanently closed on June 26, 2018.

As a result, public health officials recommended anyone who was a high risk for contracting HAV or who consumed food or beverages purchased at the Charlotte Hardee's between June 13, 2018, and June 23, 2018, receive prophylactic treatment against HAV within 14 days after their exposure at one of three clinics. These clinics were set-up before the Hardee's employee became ill. The individuals comprising the proposed class took immediate preventative action at the recommendation of public health authorities or other health professionals and, as a result, did not subsequently develop symptoms of HAV infection.

Plaintiffs have asserted in this litigation class claims for breach of warranties and negligence to recover damages for physical injury and economic loss arising from obtaining IG and/or HAV vaccinations in response to an alert by the North Carolina Department of Health and Human Services ("DOH") that Plaintiffs may have been exposed to the HAV by consuming food or drink purchased from the Charlotte Hardee's between June 13, 2018, and June 23, 2018 ("Potential Exposure Period").

Each named Plaintiff in the present case obtained a vaccination within 14 days of consuming food or beverage purchased between June 13, 2018, and June 23, 2018, at the Charlotte Hardee's, which is the time-period that CDC and FDA recommend. As a result of obtaining vaccinations, these Plaintiffs prevented the possible development of a full-blown or symptomatic HAV infection for anyone actually exposed to and infected with HAV because the inactivated antigens in the vaccine caused (as intended) a protective immune-response. As such, the Plaintiffs were able to avoid the potentially more serious and life-threatening injuries that an individual might have experienced as the result of developing an HAV infection if they were actually exposed to and infected by HAV. Furthermore, Defendant was able to avoid

3

potential liability for the more serious damages associated with a full-blown HAV infection. Nonetheless, Plaintiffs contend that they still suffered injuries for which this class action seeks fair compensation from the Defendant.

The Plaintiffs and Defendant have entered into a Settlement Agreement, subject to court approval, including the documents and exhibits incorporated therein (together, the "Settlement Agreement", **Exhibit 1),** to settle the above-captioned litigation (the "litigation"). The Settlement Agreement sets forth the terms and conditions for a proposed settlement and dismissal with prejudice of the litigation. The Settlement Agreement was negotiated at arm's length by counsel experienced in litigating and resolving class actions of this nature and is a fair and reasonable resolution of the case that will allow the class to avoid the risks inherent in any lawsuit as well as the delay of further litigation and potential appeal. Subsequent to the agreement, the parties filed an Order Approving Joint Motion for Preliminary Approval of Settlement which this Court granted on December 12, 2018. That Order is included with this motion as **Exhibit 2**.

In accordance with the Proposed Notice Plan described in the Settlement Agreement, the Settlement Administrator provided notice to the class through direct mailings and emailing's to known members of the class including persons identified by Mecklenburg County Health Department, published notice in *The Charlotte Observer*, and also established a toll-free telephone line and Settlement Website. The forms of notice are attached as exhibits to the Declaration of Joseph M. Fisher, included with this motion as **Exhibit 3**. The deadline established to submit claims, exclusion requests, and objections to the proposed Settlement was set for February 28, 2019. As of March 27, 2019, the Settlement Administrator received 1,079 claim forms. 167 of those claim forms were

4

duplicates, 15 were submitted after the deadline, 1 individual withdrew his claim, and 2 other claim forms were not accepted due to falling outside the criteria set forth in the Settlement Agreement. The Settlement Administrator did not receive any objections to the proposed settlement, and received only one request for exclusion, which was submitted in a timely manner by Lloyd Dale Upton of Fallston, North Carolina. *See* Declaration of Joseph M. Fisher. The net number of accepted claims amounted to 909, which includes 15 claims submitted after the deadline that the parties have agreed to accept. Thus, each claimant's *pro rata* share of the $246,000.00 settlement amount is $270.63. *See* Declaration of Joseph M. Fisher.

The parties therefore recommend that the Court grant this joint motion for final approval of class certification and to implement the proposed Settlement. The parties submit that the proposed Settlement is fair, reasonable, and adequate, and consistent and in compliance with the applicable provisions of the laws of North Carolina as to, and in the best interests of, each of the parties and the class members. The parties and their counsel seek to implement and consummate the Settlement Agreement according to its terms and provisions and submit that the Settlement Agreement should be binding on, and have res judicata and preclusive effect in all pending and future lawsuits or other proceedings, maintained or pursued on behalf of the Plaintiffs and all other class members, as well as their heirs, executors, and administrators, successors, and assigns.

### III. THE PROPOSED SETTLEMENT

1. **The Settlement Class.**

For purposes of this settlement, the Parties agree that the class (the "Class") shall be defined as follows:

All individuals who were (a) potentially exposed to the Hepatitis-A Virus ("HAV") at the Hardee's Restaurant, 2604 Little Rock Road, Charlotte, North Carolina ("Charlotte Hardee's"), between June 13, 2018, and June 23, 2018 ("Potential Exposure Period"), and (b) who, as a result of such potential exposure to HAV, obtained preventive medical treatment, including the administration of IG, HAV vaccine shots, or blood tests within 14 days after their exposure, and in no event any later than July 7, 2018. Excluded from the Class are (1) all persons, if any, who developed HAV infections as a result of consuming food or beverage at the Charlotte Hardee's during the Potential Exposure Period, (2) anyone receiving their first IG shot, HAV vaccine, or blood test after July 7, 2018, and (3) employees at the Charlotte Hardee's during the Potential Exposure Period.

2. **Relief to the Class.**

**General Damages:** The General Damages Settlement provides for payment of general damages to each Class Member who submits a timely, qualified claim, for general damages ("Claimant"). Each Claimant will receive as general damages a pro-rata share of the aggregate class amount of $246,000.00 paid by Defendant's insurance carrier, Nationwide Insurance Company.

**Compensation for Class Representatives:** In addition to the above, and not to be deducted from the aggregate class amount, Class Plaintiffs, McClain, Davis, E.P. and S.F., will each receive an additional $1,000.00 in compensation paid by Defendant's insurance carrier, Nationwide Insurance Company.

3. **The Plaintiffs' Counsel's Fees.**

Plaintiffs' reasonable attorneys' fees and costs will be capped at 25% of the amount paid to the Class for general damages, or what is awarded by the Court, whichever is less. In no event shall Defendant's insurer, Nationwide Insurance Company, be obligated to pay more than $61,500 for Plaintiffs' attorneys' fees and costs. This amount is in addition to the General Damages paid to Qualified Claimants.

That the following Plaintiffs' attorneys shall continue to act as counsel for the

Class ("Class Counsel"):

>Brett Dressler
>SELLERS, AYERS, DORTCH & LYONS, PA
>301 S. McDowell St., Ste. 401
>Charlotte, NC 28204
>Tel (704) 377-5050
>Fax (704) 339-0172
>
>William D. Marler
>MARLER CLARK, LLP, PS
>(Pro Hac Vice Admission Pending)
>1012 First Avenue, Fifth Floor
>Seattle, WA 98104
>Tel (206) 346-1888
>Fax (206) 346-1898
>
>Daniel K. Bryson Scott C. Harris
>WHITFIELD BRYSON & MASON LLP
>900 W. Morgan
>Street Raleigh, NC 27603
>Tel (919) 600-5000
>Fax (919) 600-5035
>
>Joseph G. Sauder
>SAUDER SCHELKOPF LLC
>555 Lancaster Avenue
>Berwyn, Pennsylvania 19312
>Telephone: (888) 711-9975
>Fax: (610) 421-1326

## IV. ARGUMENT AND CITATION TO AUTHORITIES

### A. THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE AND THEREFORE DESERVES THE COURT'S FINAL APPROVAL.

Rule 23 of the Federal Rules of Civil Procedure governs class actions. Fed. R. Civ. P. 23(e) provides, in part: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Rule 23(e) sets out the procedures for a proposed settlement and provides that the court may

only approve a settlement after conducting a hearing and finding that it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *US. Airline Pilots Association v. Velez,* No. 3:14-cv-00577-RJC-DCK, 2016 WL 8722883 (W.D.N.C. March 11, 2016).

Court approval of class action settlements is a two-step process: preliminary approval and final approval. *Manual for Complex Litigation,* Fourth, § 21.632 (2004). At the preliminary approval stage, the Court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.; See also, Velez,* 2016 WL 8722882 at *1 (first step of approval is for the court to conduct a preliminary approval hearing "to determine whether the proposed settlement is within the range of possible approval, or, in other words, whether there is probable cause to notify the class of the proposed settlement.") (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 827 (E.D.N.C. 1994)); *Manual for Complex Litigation,* Fourth, § 21.632 (2004) (preliminary approval should be granted where settlement has no "obvious deficiencies" and is within the range of possible approval). Also, at this stage of the approval process, the Court must make a preliminary determination whether the class may be certified for settlement purposes under Rule 23. *Amchem Prods., Inc. v. Windsor,* 512 U.S. 591, 620 (1997). If the trial court grants preliminary approval, notice is sent to the class and the court conducts a fairness hearing at which all parties are given the opportunity to be heard on the proposed settlement. *Velez,* 2016 WL 8722882 at *1.

At the second stage of the approval process, the "fairness hearing," the court considers arguments in favor of an in opposition to approval of the settlement. If, after the

second "fairness hearing," the trial court determines that the proposed settlement is "fair, reasonable, and adequate," it will give final approval of the settlement. Fed. R. Civ. P. 23(e)(2); *Velez,* 2016 WL 8722883 at *1 (quoting Horton, 855 F. Supp. at 827).

The Fourth Circuit has bifurcated this analysis into two issues: (1) fairness, "which focuses on whether the proposed settlement was negotiated at arm's length;" and (2) adequacy, "which focuses on whether the consideration provided the class members is sufficient." *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158-59 (4th Cir. 1991); *U.S. Airline Pilots Association v. Velez,* No. 3:14-cv-00577-RJC-DCK, 2016 WL 1615408, *4 (W.D.N.C. April 22, 2016).

In assessing the fairness and adequacy of a proposed settlement, "there is a strong initial presumption that the compromise is fair and reasonable." Courts have recognized that "[s]ettlements, by definition, are compromises which 'need not satisfy every single concern of the plaintiff class but may fall anywhere within a broad range of upper and lower limits.' " *S. Carolina Nat. Bank v. Stone,* 139 F.R.D. 335, 339 (D.S.C. 1991) (internal citations omitted).

### 1. The Settlement is Fair.

The primary concern of the fairness inquiry is whether the proposed settlement "was reached as a result of good-faith bargaining at arm's length, without collusion... " *Jiffy Lube,* 927 F.2d at 158-59. Courts consider a variety of factors in evaluating the settlement's fairness, including the posture of the case, the extent of discovery conducted, the "circumstances" of the negotiation and the experience of counsel in the type of case.

First, district courts within the Fourth Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may

9

Case 3:18-cv-00419-FDW-DCK    Document 27    Filed 03/27/19    Page 9 of 19

nonetheless be deemed fair. *See, e.g. PNC Mortg. Corp. of America,* No. CIV.A.PJM-97-3084, 1998 WL 350581 (D. Md. May 21, 1998). Here, while both of these cases are in the early stages of litigation, the informal discovery and investigation that has taken place on the underlying facts and claims has enabled the parties to fairly evaluate the merits of their respective positions and the risks inherent with further litigation. There is also no dispute that the Mecklenburg County Health Department conducted an investigation of this outbreak, which provided the parties with additional information relating to the claims at issue. Given the underlying facts and circumstances of this case, especially when combined with the extensive experience of counsel on these types of cases, the parties were able to objectively analyze the strengths and weaknesses of their positions. The settlement reflects concessions by both sides.

Similarly, the circumstances of the negotiations favor final approval of the settlement Counsel for the parties negotiated at arms-length over a period of months and involved several detailed communications and discussions.

Finally, there can be no doubt as to the experience of counsel on this type of case. Counsel for both Plaintiffs and Defendants have extensive experience in prosecuting complex class actions, including cases involving potential food-borne illness cases. Counsel are well-qualified to conduct the Litigation. Accordingly, the Parties are well-suited to make informed judgments regarding the nature of the Settlement.

### 2. The Settlement is Adequate.

In assessing the adequacy of a proposed settlement, the Fourth Circuit considers the following five factors: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial; (3) the anticipated duration and expense of additional

10

Case 3:18-cv-00419-FDW-DCK    Document 27    Filed 03/27/19    Page 10 of 19

litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *Jiffy Lube,* 927 F.2d at 159; *Velez,* 2016 WL 1615408 at *4.

The first three factors are related. Here, the parties do not dispute that there was an HAV outbreak in the metropolitan Charlotte area in the summer of 2018, or that an employee of the Hardee's restaurant located at 2604 Little Rock Road, Charlotte, NC 28214 ("Charlotte Hardee's") contracted HAV. The putative class consists of individuals who were potentially exposed to HAV and obtained a vaccination or an IG shot (with some persons also getting an HAV blood test) because of their potential exposure to HAV. Defendant denies liability arising from Plaintiffs' claims and have asserted numerous defenses both on the merits and as to class certification for purposes. While Defendant believes that it would likely prevail in these actions, it has concluded that it is desirable that this litigation be settled in the manner and on the terms and conditions set forth in the Settlement Agreement in order to avoid the expense, inconvenience and burden of further protracted legal proceedings and the uncertainties inherent in any litigation.

On the other hand, Plaintiffs believe that the claims asserted have merit and are supported by the available evidence. However, Plaintiffs also recognize the expense and length of trials in these actions which could take several years. Put short, the experienced attorneys for all Parties in these cases are aware that there are both foreseen and unforeseen difficulties in any litigation. Both sides of this litigation believe in the strength of their positions but recognize the risks inherent with litigation. A complex litigation such as this, including appeals, could take years. With respect to the solvency of the Defendant, there is no evidence that the Defendant is in any danger of becoming insolvent. Finally, the Parties received no opposition to this settlement.

The settlement here contains no "obvious deficiencies" and confers substantial benefits on the putative class members. Given the risks on both sides, and the potential for protracted litigation, the Parties have concluded that the settlement is adequate and final approval is appropriate.

### B. THIS COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

Before a court may approve a proposed class action settlement, the class must be conditionally certified and that the requirements of Fed. R. Civ. P. 23 are met. *Velez,* 2016 WL 8722883 at *1. The party seeking to bring a class action must establish the following under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *West,* 2017 WL 2470633 at *1; *Gunnells v. Health Plan Servs., Inc.,* 348 F.3d 417, 423 (4th Cir. 2003), *cert. denied,* 542 U.S. 915 (2004). Once the Rule 23(a) prerequisites are met, Plaintiffs must establish that the putative class meets one of the requirements of Rule 23(b). *West,* 2017 WL 2470633 at* 3. The Supreme Court has recognized that, in certifying a settlement class, the court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620.

Here, the proposed Settlement Class satisfies the requisite elements of Rule 23(a) and Rule 23(b)(3) in the context of settlement. With respect to numerosity, Rule 23(a)(l) requires that the class be so numerous that joinder of all members is impracticable. Here, the Mecklenburg Department of Health indicated that more than

12
Case 3:18-cv-00419-FDW-DCK    Document 27    Filed 03/27/19    Page 12 of 19

2,000 individuals received a HAV vaccination during the relevant time period and 907 individuals submitted valid claims to the Claims Administrator. This easily meets the numerosity requirement. In fact, in the Fourth Circuit, class actions have been found to meet the numerosity requirement with as few as eighteen members. *Cypress v. Newport News General and Nonsectarian Hospital Ass 'n,* 375 F.2d 648, 653 (4th Cir. 1967).

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." This subsection only requires that "common issues exist." *Holsey v. Armour & Co.,* 743 F.2d 199, 216-17 (4th Cir. 1984). Here, common questions of law and fact exist with regard to the alleged injury and damages caused to each Plaintiff and putative class member allegedly caused by potential exposure to HAV at the Charlotte Hardee's and including whether Defendant's actions with respect to the ill Hardee's employee breached and warranties or duties to Plaintiffs or putative class members. For purposes of settlement, Plaintiffs also meet the typicality requirement of Rule 23(a).

Plaintiffs allege that they, like all class members, were potentially exposed to HAV at the Charlotte Hardee's and they assert the same legal claims as all class members. They further allege that their damages are typical of those allegedly suffered by every class member. *See, Velez,* 2016 WL 1615408, *2 (where claims of Plaintiffs were identical to those of class members, typicality was met).

The adequacy of representation requirement of Rule 23(a) requires a two-pronged inquiry: (1) the named plaintiffs must not have interests antagonistic to those of the class; and (2) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation. *Velez Hewlett v. Premier Salons Int'l, Inc.,* 185 F.R.D. 211, 218 (D. Md. 1997). As discussed above, proposed class counsel are well-qualified,

experienced and able to conduct this litigation. Plaintiffs' interests are co-extensive with those of the Class, since Plaintiffs seek relief that is identical to that which is sought by every other member of the Class. Moreover, Plaintiffs and Class Counsel have no interests antagonistic to those of the Settlement Class and are not subject to any unique defenses. Plaintiffs and Class Counsel have and will continue to fairly and adequately protect the interests of the Settlement Class.

The requirements of Rule 23(b)(3) are also met in this settlement context. Rule 23(b)(3) only requires that the common issues predominate, not that they are "dispositive" of the entire litigation. *Brown v. Pro Football,* 146 F.R.D. 1, 4 (D.D.C. 1992). Predominance exists here for purposes of this settlement where Plaintiffs claim they and all putative class members suffered the same injury from alleged exposure to HAV at the Charlotte Hardee's. *Kay Company v. Equitable Production Co.,* No. 2:06-cv-00612, 2009 WL 10664160, * 2 (S.D. W. Va. May 15, 2009) (Predominance met in settlement context where all class members had "common liability claims" with respect to alleged royalty payments). As noted above, given that the Settlement Class will be certified for the purposes of settlement only, the Rule 23(b)(3) requirement of manageability need not be met because, in the context of a settlement class, manageability issues are not a bar to certification since there will be no trial. *Amchem,* 521 U.S. at 620; *Kay Company,* 2009 WL 10664160 at *2 (manageability issue mooted in class action settlement context). Finally, in this settlement context, a class action is superior to other available methods for a fair and efficient adjudication of these cases. *See, In re Serzone Products Liability Litigation,* No. MDL No. 1477, 2004 WL 2849197 (S.D. W. Va. Nov. 18, 2004) (superiority met in putative class action settlement where it promoted

efficiency and uniformity where many settlement class members would not be forced to pursue separate actions). Because all of the requirements of Rule 23 are met here, the Parties respectfully request that the Court order final certification the proposed Settlement Class.

### C. THE CLASS REPRESENTATIVES' STIPEND AND CLASS COUNSELS' FEES AND COSTS ARE FAIR AND REASONABLE

The proposed settlement would provide incentive payments in the amount of $1,000.00 for each of the lead Plaintiffs, Iafreedre McClain, Montrell Davis, E.P., and S.F., who participated in the litigation and assisted counsel in prosecuting it. Incentive payments have been routinely approved by the courts in class action settlements as a way of compensating class representatives who have lent their names and efforts to the prosecution of litigation on behalf of others. The Courts have also Recognized that such payments can serve an important function in promoting class action settlements. *See Sheppard v. Consolidated Edison Company of New York, Inc.*, 2002 WL 2003206, *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments). In this case, the lead plaintiffs put themselves on the line for the benefit of the class. The Court should approve these payments, as the incentive payments requested here are in line with payments approved by courts in other similar cases.[1]

The litigation resulted in a significant benefit to the class. Under the terms of the

---

[1] See, e.g., *Hayes et al. v. Aramark Sports, LLC*, C.A. No. 08-10700-RWZ (D. Mass. 2009) ($25,000 in tips class action); *Trujillo v. City of Ontario*, 2009 WL 2632723, at *5 (C.D. Cal. 2009) ($10,000 and $30,000 for sixteen named Plaintiffs); *Godt et al. v. Anthony's Pier Four, Inc.,* C.A. No. 07-3919-BLS1 (Mass. Suffolk Superior Ct. 2009) ($25,000); *Shea et al. v. Weston Golf Club,* C.A. No. 02-1826 (Mass. Middlesex Superior Ct. 2009) ($25,000); *Fernandez et al. v. Four Seasons Hotel,* C.A. No. 02-4689 (Mass. Suffolk Superior Ct. 2008) ($25,000); Banks et al. v. SBH Corp*. (Grill 23),* C.A. No. 04-3515 (Mass. Suffolk Superior Ct. 2007) ($25,000); *Meimaridis, et al. v. Brae Burn Country Club*, C.A. No. 04-3769 (Mass. Middlesex Superior Ct. 2006) ($25,000); *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *13 (W.D. Wash. 2001) ($25,000); *Presley v. Carter Hawley Hale Profit Sharing Plan*, 2000 WL 16437, at *2 (N.D. Cal. 2000) ($25,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (citing cases awarding payments ranging from $35,000 to $50,000 for named Plaintiffs); *Yap v. Sumintomo Corp. of Am.*, 1991 WL 29112, *9 (S.D.N.Y. 1991) ($30,000).

settlement, the defendants agreed to pay each claimant a *pro rata* share of the aggregate class amount of $246,000.00, which—with 907 valid claims submitted—results in a payment of $271.22 per class member. The Defendant has also agreed to pay the Class Representatives $1,000.00 each for their involvement.

In addition to the foregoing monies, the Defendant has agreed to pay the Plaintiffs' counsel their attorneys' fees and costs at 25% of the amount paid to the class for general damages, or what is awarded by the Court, whichever is less. In no event shall the Defendant's insurer, Nationwide Insurance Company, be obligated to pay more than $61,500 for Plaintiffs' attorneys' fees and costs. The amount is in addition to the General Damages paid to Qualified Claimants. A detailed summary of the effort and time expended by Plaintiffs' counsel in handling this matter is found in Plaintiff Counsel's Affidavit, attached hereto as **Exhibit 4.**

V.  **CONCLUSION**

For the reasons set forth above, the parties to this action respectfully request that the Court:

(1) Enter an order granting final approval of the Settlement Agreement including a ruling that (a) finds that the Settlement Agreement is final, fair, reasonable, adequate, (b) grants the request of Lloyd Dale Upton of Fallston, North Carolina, to be excluded from the Class, and (c) approves the Plaintiffs' attorneys' fees and costs and the Class Representatives' stipends;

(2) Enter final judgment in accordance with the Settlement Agreement; and

(3) Dismiss the instant litigation with prejudice.

Respectfully submitted this 27th day of March 2019.

s/Brett Dressler (NC Bar #34516)
**SELLERS, AYERS, DORTCH & LYONS, PA**
301 S. McDowell St., Ste. 410
Charlotte, NC 28204
Tel (704) 377-5050
Fax (704) 339-0172

s/William D. Marler
Admission *Pro Hac Vice*
**MARLER CLARK, L.L.P., P.S.**
1012 First Avenue, Fifth
Floor Seattle, WA 98104
Toll Free: (800) 884-9840
Telephone: (206) 346-1888
Facsimile: (206) 346-1898
*Attorneys for Plaintiffs Iafreedre McClain and Montrell Davis*

s/Daniel K. Bryson
s/Scott C. Harris
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel (919) 600-5000
Fax (919) 600-5035

s/Joseph G. Sauder
**SAUDERSCHELKOPFLLC**
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: 888.711.9975
Fax: 610-421-1326
*Attorneys for Plaintiffs E.P. and S.F.*

s/Shawn D. Scott
s/Alan M. Maxwell
s/Nicholas P. Panayotopoulos
s/Jennifer Adler
**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Telephone: (404) 876-2700
Facsimile: (404) 875-9433
*Attorneys for Defendant Morning Star LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel of record who have appeared in the case.

s/Brett Dressler *(NC* Bar #34516)
**SELLERS, AYERS, DORTCH & LYONS, PA**
301 S. McDowell St., Ste. 410
Charlotte, NC 28204
Tel (704) 377-5050
Fax (704) 339-0172

Specifically, counsel for the defendant:

s/Shawn D. Scott, Esq.
**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL,LLC**
North Carolina Bar No. 3463
Alan M. Maxwell
Nicholas P. Panayotopoulos
Jennifer Adler
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Telephone: (404) 876-2700
Facsimile: (404) 875-9433
sscott@wwhgd.com
amaxwell@wwhgd.com
npanayo@wwhgd.com
jadler@wwhgd.com
***Attorneys for Defendant Morning Star LLC***